Filing # 182085420 E-Filed 09/18/2023 11:25:02 PM

|  | **IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT, IN AND FOR OKALOOSA COUNTY, FLORIDA** |

**VINA RENEE WILKERSON,**

      **Plaintiff,**

v.

**CITY OF DESTIN, FLORIDA,**

      **Defendant.**

_____/

2023 CA 003457 F
**CASE NO.: 23-CA-**
**FLA BAR NO.: 0739685**

## COMPLAINT

Plaintiff, VINA RENEE WILKERSON, hereby sues Defendant, CITY OF DESTIN, FLORIDA, and alleges:

## NATURE OF THE ACTION

1.      This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes and 42 U.S.C.§2000e et seq.

2.      This action involves claims which are, individually, in excess of Fifty Thousand Dollars ($50,000.00), exclusive of costs and interest.

## THE PARTIES

3.      At all times pertinent hereto, Plaintiff, VINA RENEE WILKERSON, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to her gender, and she was retaliated against after reporting Defendant's unlawful employment practices.

4.      At all times pertinent hereto, Defendant, CITY OF DESTIN, FLORIDA, has been organized and existing under the laws of the State of Florida. At all times pertinent to this action,

Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.      Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6.      Plaintiff, a female, began her employment with Defendant on or about February 22, 2022, and held the position of Code Compliance Admin at the time of her wrongful termination on October 11, 2022.

7.      Despite her stellar work performance during her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of her gender, and because she reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

8.      The disparate treatment and retaliation came at the hands of specifically but not limited to City Manager Lance Johnson, a male; former Deputy City Manager Web Warren, a male; Code of Compliance Director Susan Corbin, a female; Code of Compliance Deputy Director Danny Sullivan, a male; Interim HR Manager Karen Jankowski, a female, and HR Manager Jamie Dittmer, a female.

9.      At the onset of her employment, Plaintiff was informed by former Director Joey Forione and Deputy Director Kris Mercurio, that she would be trained according to Florida Association of Code Enforcement ("FACE") fundamentals, so that she could better perform her job duties as an Administrative Assistant by having a foundation understanding of the Code Enforcement and Compliance process. Director Forione informed Plaintiff that the former employee in her position was trained according to this.

10.     Beginning on or about March 2022, Plaintiff was subjected to sexual harassment from Sullivan, who promptly made advances towards Plaintiff despite her efforts to maintain a strictly professional relationship. Instances of Sullivan's inappropriate conduct in the workplace include, but are not limited to, physically puckering his lips to Plaintiff and on another instance making the remark, "Do not take this the wrong way, but I would like to be in bed with you." He also told Plaintiff that if he were her fiancée, they would be sleeping together. Sullivan would commonly ask Plaintiff if she was single and called her beautiful. Plaintiff rejected all offers and advances and made it known to Sullivan that she did not appreciate his advances and would not be following through with his requests.

11.     In April 2022, Director Forgione retired, and Deputy Director Mercurio was no longer employed with Defendant.  In the following month, Sullivan was promoted to Deputy Director, Plaintiff's direct supervisor, and his sexual advances towards Plaintiff continued. In addition, Plaintiff noticed that Sullivan lacked the qualities of a supervisor, as he wouldn't communicate his early departure from work to Plaintiff, nor adequately fulfill his job duties. Moreover, the fear of facing retaliation for denying Sullivan's sexual advances created a hostile work environment, leading Plaintiff to feel uneasy about expressing any of her concerns.

12.     Before Forgione and Mercurio left, Plaintiff started learning about Code Compliance but couldn't continue the training due to Sullivan's inadequate skills and inability to provide guidance.

13.     Sometime later, Plaintiff was promised an office space and/or Administrative Assistance area, specifically because Johnson wanted Plaintiff to concentrate on her work and handle the phone calls with little interruption. This promise was unfulfilled, and Plaintiff was placed in a common area with many disruptions.

14.     In July 2022, Plaintiff reported her concerns of harassment from Sullivan to City Manager Assistant Sheri Betha. Instead of advising her to report the issue to Defendant's HR, she was instructed to await guidance from the new Director, Corbin. Following these instructions, Plaintiff later approached Corbin with her concerns. Unfortunately, Corbin disregarded her complaints and offered excuses, citing that Sullivan had a girlfriend, and implied that she would be able to identify a cheater if there was one. Notably, Corbin and Sullivan had been communicating for months prior to Corbin beginning her new position in person, resulting in the development of a strong relationship between the two.

15.     Additionally, Plaintiff was denied promised training and promotional opportunities, which she sought out in an effort to escape the hostile work environment which Sullivan created. Specifically, Plaintiff was previously promised "FACE Training Level 1," however, Johnson and Corbin told her that she was not a "Code Officer" and would not be sent to training. On another occasion, Plaintiff applied and interviewed for a "Short-Term Rental Code Officer Position." After the interview, Johnson informed Plaintiff that the position did not exist, and she learned that she had been misled into applying for this position by Corbin.

16.     Similarly, Trinity Morris, an employee in the Parks and Recreation department, faced gender discrimination from the Defendant. She applied for a Code Compliance position multiple times but was consistently denied, despite being fully qualified for the position.

17.     Previously in her employment, Plaintiff was informed by former Director Forgione and Deputy Director Mercurio that she could provide support for the department by taking a Citizens Parking class, specifically, because the Code Staff were undermanned and understaffed, which Plaintiff later witnessed as there was a lack of applicants.

18.     Due to her peaked interest in becoming a Code Officer, Plaintiff expressed her interests in taking this class, but Sullivan told her that she did not need the class, that there would never be a situation where he needed her to write a ticket, he would rather Plaintiff stay in her position, and that there was no reason she should become a Code Officer. Plaintiff was conflicted by this response, as Sullivan would, in the past, bring flowers and offer false promises of Plaintiff being promoted to a Code Officer.

19.     Additionally, Johnson declared that Plaintiff attending FACE training would not be beneficial to the Department, despite Defendant hiring employees with no code experience. At least one of these new hires was left without proper direction on their first day of employment because of Sullivan's absence. Corbin asked Plaintiff to assist in getting the new employee accustomed to the workplace, which she did, but could have done better with FACE training.

20.     In or around August 2022, Plaintiff reported her firsthand observation of gender discrimination displayed by Sullivan to Interim Director Jankowski. Specifically, but without limitation, she reported Sullivan's continued and unwanted advances towards Plaintiff, and Sullivan deliberately undermining the hiring prospects of female applicants by speaking negatively about them during the hiring process. Unfortunately, no corrective action was taken in response to her report.

21.     Furthermore, Interim Director Jankowski stated that her only objective was to hire a new HR manager so that she could return to her retired life.

22.     In retaliation for not succumbing to Sullivan's sexual advances, and at least in part for reporting his actions, Plaintiff was subjected to retaliation which included condescending and rude behavior from Sullivan, publicly reprimanding Plaintiff in front of her co-workers due to his

own lack of communication, and Sullivan telling Plaintiff that she was *only* hired by the former Deputy Director because "he could control" her.

23.     On one occasion, Plaintiff attended a meeting with Sullivan and a concerned citizen. As the citizen was explaining her situation while looking at Plaintiff, Sullivan interrupted and stated, "Look at me, I am the boss, she is the secretary." This belittling behavior was common from Sullivan to Plaintiff.

24.     During her employment with the Defendant, which lasted for less than eight months, Plaintiff proved herself as a loyal and dedicated employee. Within this timeframe, she demonstrated her commitment to personal growth by passing the FEMA IC-100 C class, obtaining the Florida Parking Enforcement Specialist for Citizens certification, and becoming a Florida Notary. Despite this, Plaintiff received an unfavorable and contradictory six-month review by Corbin, who had only been in her position for about six weeks. Plaintiff's accomplishments were not considered or mentioned in this evaluation. Contrary to this, employees who watch tv shows on Defendant's computers, waste company time socializing, and smoke vape pens within the workplace, are given positive and/or favorable evaluations. Plaintiff had not received any reprimands prior to this but continued to be retaliated against for reporting Sullivan's actions.

25.     Plaintiff again reported her concerns of a hostile work environment and retaliation for her previous reporting to Defendant's HR on September 14, 2022, this time in writing. No corrective action resulted.

26.     On or around October 4, 2022, Plaintiff was in a serious car accident which she immediately informed Defendant of. After this notification, Sullivan went to the site of Plaintiff's accident and took pictures of the area. Sullivan did not engage with Plaintiff, nor did

he ask about her well-being. Plaintiff was allotted time off from Defendant through submission of a physicians note.

27.     On October 11, 2022, Plaintiff returned to work and noticed ostracizing behavior from Corbin, who blatantly ignored Plaintiff. Later that day, Corbin informed Plaintiff that HR had been trying to reach her, but could not establish contact, despite Plaintiff being available all day and not receiving any calls. Thereafter, Plaintiff was conveniently terminated during a meeting with HR Manager Dittmer and Interim HR Manager Jankowski, wherein she expressed her displeasure with Defendant's lack of following up with her previously voiced concerns about Sullivan's behavior. HR Manager Dittmer quickly dismissed Plaintiff's concerns. Plaintiff was not given an official reason for her termination.

28.     Based on information and belief, Sullivan was relieved from previous employment due to concerns about his work performance and a history of disregarding policies. These problematic behaviors persisted and/or worsened during his tenure with Defendant. Unfortunately, due to Defendant's failure to address Plaintiff's concerns, she endured a hostile work environment and was subsequently wrongfully terminated.

29.     Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## GENDER DISCRIMINATION

30.     Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

31.     This is an action against Defendant for discrimination based upon gender.

32.     Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender in that Plaintiff was treated differently than similarly situated employees of Defendant who are male

7

and has been subject to disparate and poor treatment on the basis, at least in part, of Plaintiff's gender.

33.     Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

34.     Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

35.     Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

36.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender-based nature and in violation of the laws set forth herein.

37.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein led, at least in part, to Plaintiff's termination.

38.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender.

39.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have

occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT II
## HOSTILE WORK ENVIRONMENT

40.     Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

41.     This is an action against Defendant for discrimination based upon gender.  This is a hostile work environment claim.

42.     Plaintiff has been the victim of discrimination on the basis of Plaintiff's gender in that she was subjected to a hostile work environment by the Defendant with no adequate remedial action.  The harassment was based on gender, was repeated, frequent, unwelcome and adversely affected a term or condition of Plaintiff's employment.  The harassment of Plaintiff was not isolated to her.

43.     Defendant is liable for the hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

44.     Furthermore, Defendant knowingly condoned and ratified the hostile work environment as more fully set forth above because it allowed the environment and participated in same.

45.     Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

46.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender-based nature and in violation of the laws set forth herein.

47.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein led, at least in part, to Plaintiff's termination.

48.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender.

49.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief.

**COUNT III**
**RETALIATION**

50.     Paragraphs 1 through 29 are realleged and incorporated herein by reference.

51.     Defendant is an employer as that term is used under the applicable statutes referenced above.

52.     The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting her.

53.     The foregoing unlawful actions by Defendant were purposeful.

54.     Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and was the victim of retaliation thereafter, as related in part above.

55.     Plaintiff is a member of a protected class because she reported unlawful employment practices and was the victim of retaliation thereafter.  There is thus a causal

connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

56.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent. Plaintiff is entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)    enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)    enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)    award Plaintiff interest where appropriate; and

(g)    grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

11

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 18th day of September 2023.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF

12